## GRAY v. GREENE.

## GREENE v. GRAY.

(Court of Appeals of District of Columbia. Submitted November 10, 1926. Decided December 6, 1926.)

Nos. 1880, 1881.

1. Patents ⬤91(1)—Applicant in interference proceeding, copying claims of another patent, has burden of proof of priority.

In interference proceeding, applicant, copying claims of patent previously issued, has burden of proving his priority beyond a reasonable doubt.

2. Patents ⬤91(4)—Applicant for patent for invention relating to electrical furnaces held not entitled to award of priority.

Applicant for patent for invention relating to electrical furnaces for melting and refining metals *held* not entitled to finding of priority in interference proceeding as against patent previously issued.

Appeal from the Commissioner of Patents.

Interference proceeding between Albert E. Greene and James H. Gray, holder of patent, claims of which were copied. From a decision of the Commissioner of Patents, awarding priority to Greene as to certain counts, and to Gray as to others, both parties appeal. Decision affirmed in part, and reversed in part, with directions.

D. A. Usina, of New York City, and E. W. Shepard, of Washington, D. C., for Gray.

E. H. Merchant and M. W. Sage, both of New York City, and G. J. Hesselman and R. K. Stevens, both of Washington, D. C., for Greene.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and HATFIELD, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. These are cross-appeals from a decision of the Commissioner of Patents in a patent interference proceeding.

[1] Gray filed his application, with eight claims, on July 20, 1918; his patent was regularly issued on September 10, 1918. About a year later, to wit, on September 8, 1919, Greene filed, copying all of Gray's claims. An interference was declared, the eight counts being copies of Gray's claims. Greene is accordingly bound to prove his case beyond a reasonable doubt. Testimony was taken by both parties. The Examiner of Interferences awarded priority as to all of the counts to Gray. This decision was affirmed by the Examiners in Chief; but upon appeal the Commissioner of Patents awarded priority to Greene as to counts 1, 2, 4, and 7, and to Gray as to counts 3 and 6; the appeal was dismissed by consent as to counts 5 and 8. These cross-appeals were then taken.

[2] The invention relates to electric furnaces for melting and refining metals, and particularly to the use of high and low voltages during the melting and refining periods, respectively, and the method and means for cutting a reactance into the power circuit during the melting period, in order to prevent excessive surges of the current and consequent interruption of the arc, and for cutting the reactance out during the refining period in order to secure a good power factor. The apparatus consists in part of a transformer, producing an induced E. M. F. by means of primary and secondary circuits acting in correlation. The entire construction is fully described in the decisions of the Patent Office and need not be repeated here.

The following are the counts in controversy:

"1. The method of melting and refining metal in an electric furnace, which consists

in supplying a current of comparatively high E. M. F. to the electrodes during the melting down period, to produce a comparatively long arc and cutting a reactance into the primary circuit, to thereby insure continuity of the arc and prevent surges on the power line.

"2. The method of melting and refining metal in an electric furnace, which consists in changing the E. M. F. from a higher to a lower voltage when performing, respectively, the melting down and refining operations; reactances being introduced into the circuit at the time the charge is being melted down and the higher E. M. F. used.

"3. The methods of varying the K. W. H. input into electric furnaces for melting down and refining the charge, which consists in introducing a current of high E. M. F. through a reactance in the circuit to prevent surges on the power line, and subsequently cutting out said reactance and introducing a comparatively low E. M. F. during the finishing or refining period.

"4. In combination with an electric furnace, circuit arrangements whereby a reactance is introduced in the primary circuit and a comparatively high voltage utilized during the melting down of the charge, and means whereby the E. M. F. may be lowered during the finishing operation to vary the intensity of the heat generated at the electrodes to prevent injury to the said walls and roof of the furnaces."

"6. In combination with the electrodes of an electric furnace, a transformer and means whereby the E. M. F. and the reactance in the primary circuit may be varied, to insure the continuity and vary the intensity of the arc within the furnace.

"7. In combination with the electrodes of an electric furnace, a transformer, reactance coils, and means whereby the reactance coils may be cut in circuit with windings of the transformer during the melting down of the charge to permit the use of the comparatively high E. M. F. and long arc with a current of great strength, without producing excessive current fluctuations or surges on the line, and means whereby a comparatively lower E. M. F. may be impressed on the windings of the transformer to give a shorter arc during the finishing or refining period."

The record discloses that the evidence in the case was first carefully reviewed and considered by the Examiner of Interferences, who found that Greene should be restricted to his filing date for reduction to practice as to all of the counts, and for conception as to counts 1, 4, 5, 6, and 8; that as to counts 2, 3, and 7 Greene had established conception as early as March, 1917, but had failed in diligence between the respective filing dates of the parties. Priority was accordingly awarded to Gray as to all of the counts. The evidence was again fully considered by the Examiners in Chief, with similar results. We think these conclusions are fully supported by the record.

The Commissioner of Patents, however, has held upon the evidence that Gray was the first to conceive and the first to reduce to practice as to counts 3 and 6, but that Greene was the first to conceive and the first to reduce to practice as to counts 1, 2, 4, and 7.

It will be noted that counts 1 and 4 of the interference provide for a reactance to be cut into the primary circuit during the melting process. In Gray's patent this is accomplished by the use of reactance coils, which are cut into or out of the primary circuit by means of switches. Greene's disclosure has no provision for any reactance elements to be cut into or out of the primary circuit. The Commissioner, however, held that a similar effect was produced in Greene's apparatus by means of reactance coils in the secondary circuit, saying that it is well understood that, when a reactance coil is introduced into a secondary circuit, its reactance is simultaneously introduced into the primary circuit, and that the lag produced by the reactance coil appears in both circuits.

In our opinion, however, these counts, which originated in Gray's patent, should be given the meaning plainly intended by the patentee, and we see no escape from the interpretation that the provision for a reactance introduced or cut into the primary circuit means a reactance element actually serving in the primary circuit, and not an element used in the secondary circuit producing a similar result. We are unable, therefore, to agree with the Commissioner's conclusion respecting counts 1 and 4.

In respect to counts 2 and 7 it will be observed that both counts provide for the melting and refining of metal in the electric furnace by changing the E. M. F. from a higher to a lower voltage when performing, respectively, the melting down and refining operations; reactances being introduced into the circuit at the time the charge is being melted down and the higher E. M. F. used. The Commissioner held upon the evidence that Greene in the year 1917 must have contemplated operating a system with reactance coils in circuit at some time, and accordingly his system would support these counts, which

say nothing about cutting the coils out during the low voltage period.

We think this conclusion is erroneous. Counts 2 and 7 provide for the cutting in of the reactance coils during a specific period, to wit, the melting down period; whereas, Greene's prior device fails to show or describe the relation between the cutting in and out of the reactance and the change of voltage called for by these counts. It is not apparent that Greene had in mind in 1917 that it was especially desirable to introduce reactance into the circuit during the melting down period, in the process of melting and refining metal.

We are therefore of the opinion that the Commissioner of Patents erred in awarding priority to Greene as to counts 1, 2, 4, and 7, and his decision to that effect is accordingly reversed, with directions to award priority as to these counts to Gray. The decision awarding priority to Gray as to counts 3 and 6 is affirmed.